LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
Taimur Alamgir (TA 9007)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs, FLSA Collective Plaintiffs*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| ANDREW CHANG and RYAN SANTOS, *on behalf of themselves,* *FLSA Collective Plaintiffs* *and the Class,* | Case No: 17 CV 8816 |
| Plaintiffs, | **FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT** |
| v. | |
| PHILIPS BRYANT PARK LLC d/b/a BRYANT PARK HOTEL, PHIL COLUMBO, and MICHAEL STRAUSS, | |
| Defendants. | |

---

       Plaintiffs, ANDREW CHANG and RYAN SANTOS ("Plaintiffs"), on behalf of themselves and others similarly situated, by and through their undersigned attorneys, hereby file this First Amended Class and Collective Action Complaint against Defendants, PHILIPS BRYANT PARK LLC d/b/a BRYANT PARK HOTEL (the "Corporate Defendant"), PHIL COLUMBO, and MICHAEL STRAUSS (the "Individual Defendants," and collectively with the Corporate Defendant, the "Defendants") and state as follows:

## INTRODUCTION

1.       Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that they and others similarly situated are entitled to recover from Defendants: (1) unpaid overtime premium, (2) unpaid wages due to time shaving, (3) tips earned at private catering events that were illegally retained by Defendants, (4) portions of tips earned on room service orders illegally deducted and retained by Defendants, (5) liquidated damages and (6) attorneys' fees and costs.

2.       Plaintiffs further allege that, pursuant to the New York Labor Law ("NYLL"), they and others similarly situated are entitled to recover from Defendants: (1) unpaid overtime premium, (2) unpaid wages due to time shaving, (3) tips earned at private catering events that were illegally retained by Defendants, (4) portions of tips earned on credit card room service orders illegally deducted and retained by Defendants, (5) mandatory surcharges illegally retained by Defendants, (6) statutory penalties, (7) liquidated damages and (8) attorneys' fees and costs.

3.       Plaintiff CHANG further alleges, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, as amended ("Title VII"), he is entitled to recover from Defendants for discrimination based on race: (1) back pay, (2) compensatory damages for emotional distress, (3) punitive damages and (4) attorneys' fees and costs.

4.       Plaintiff CHANG further alleges that, pursuant to the New York State Human Rights Law, ("NYSHRL"), he is entitled to recover from Defendants for discrimination based on race: (1) compensatory damages and (2) damages for retaliation.

5.       Plaintiff CHANG further alleges that, pursuant to the New York City Human Rights Law, ("NYCHRL"), he is entitled to recover from Defendants for discrimination based on

race: (1) compensatory and punitive damages, (2) damages for retaliation and (3) attorneys' fees and costs.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

7.      Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

8.      Plaintiff, ARTHUR CHANG, for all relevant time periods, was a resident of New York County, New York.

9.      Plaintiff, RYAN SANTOS, for all relevant time periods, was a resident of Bronx County, New York.

10.     The Defendants operate a luxury boutique hotel doing business under the trade name "Bryant Park Hotel," located at 40 West 40th Street, New York, NY 10018 ("Bryant Park Hotel" or the "Hotel"). The Hotel includes the Cellar Bar, an upscale lounge located in the Hotel's basement.

11.     PHILIPS BRYANT PARK, LLC d/b/a BRYANT PARK HOTEL is a domestic limited liability company organized under the laws of the State of New York with an address for service of process at c/o Lazer Aptheker Rosella & Yedid P.C., 225 Old Country Road, Melville, NY 11747 and a principal place of business located at 40 West 40th Street, New York, NY 10018.

10.     Individual Defendant PHIL COLUMBO is a senior officer of the Corporate Defendant and the General Manager of Defendants' Bryant Park Hotel. PHIL COLUMBO exercises operational control as it relates to all employees including Plaintiffs, FLSA Collective

Plaintiffs and the Class. Defendant PHIL COLUMBO exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiffs, FLSA Collective Plaintiffs and the Class. At all times, employees could complain to Defendant PHIL COLUMBO directly regarding any of the terms of their employment, and Defendant PHIL COLUMBO had the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees, and to reprimand employees for performing tasks improperly.

11.     Individual Defendant MICHAEL STRAUSS is a senior officer of the Corporate Defendant and the Financial Director of Defendants' Bryant Park Hotel. MICHAEL STRAUSS exercises operational control as it relates to all employees including Plaintiffs, FLSA Collective Plaintiffs and the Class, and is in charge of payroll operations at the Hotel. Defendant MICHAEL STRAUSS exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiffs, FLSA Collective Plaintiffs and the Class. At all times, employees could complain to Defendant MICHAEL STRAUSS directly regarding any of the terms of their employment, and Defendant MICHAEL STRAUSS had the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees, and to reprimand employees for performing tasks improperly.

4

12.     At all relevant times, the Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA.

13.     At all relevant times, the work performed by Plaintiffs, FLSA Collective Plaintiffs and Class members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

14.     Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-managerial employees (including but not limited to room service delivery persons, servers, room service order takers, porters, housekeepers, bellboys, bartenders, barbacks, and concierges) employed by Defendants on or after the date that is six years before the filing of the original Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

15.     At all relevant times, Plaintiffs and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them (i) overtime premiums at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek and (ii) compensation for all hours worked due to a policy of time shaving.

16.     In addition, a subclass of FLSA Collective Plaintiffs who worked as tipped room service delivery persons and/or servers and housekeepers (the "Tipped Subclass") suffered from Defendants' policies of illegally retaining tips from catering events and portions of tips on room service orders that they earned. Plaintiffs were both members of both the Class and the Tipped Subclass.

17.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

18.     Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all current and former non-managerial employees (including but not limited to room service delivery persons, servers, room service order takers, porters, housekeepers, bellboys, bartenders, barbacks and concierges) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

19.     All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

20.     The proposed Class is so numerous such that a joinder of all members is impracticable and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the

calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

21.     Plaintiffs' claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class members were subject to Defendants' corporate practices of (i) failing to pay them overtime premium at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek (ii) time-shaving hours that they worked each week, (iii) failing to pay spread of hours, (iv) failing to provide wage statements that were in compliance with requirements of the NYLL. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

22.     Furthermore, a subclass of all Class Members who were tipped room service delivery persons and/or servers and housekeepers (the "Tipped Subclass") also suffered as a result of Defendants' policy of unlawfully retaining tips from catering events and portions of tips on room service orders, to which they were entitled. Plaintiffs are both members of both the Class and the Tipped Subclass.

23.     Plaintiffs are able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation, and have previously represented plaintiffs in wage and hour cases.

24.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

25.     Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their

employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

26.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a)  Whether Defendants employed Plaintiffs and the Class members within the meaning of the New York law;

b)   What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class members properly;

c)  At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay the Class members for their work;

d)  Whether Defendants established the tip pool for Class members without the agreement or consent of the Class members;;

e)  Whether Defendants unlawfully retained tips earned by Plaintiffs and the rest of the Tipped Subclass that were earned from customers at private catering events;

f)  Whether Defendants unlawfully retained a portion of each tip earned by Plaintiffs and the rest of the Tipped Subclass Members on each room service order;

g)  Whether Defendants provided to Plaintiffs and Class members annual wage notices, as required under the New York Labor Law;

h)  Whether Defendants provided to Plaintiffs and Class members proper wage statements with each payment of wages as required by New York Labor Law;

i)   Whether Defendants paid Plaintiffs and Class members spread of hours premium payment for each shift exceeding ten (10) hours in duration;

j)   Whether Defendants properly compensated Plaintiffs and Class members overtime premiums for all hours worked in excess of forty (40) under state and federal law;

k)   Whether Defendants caused time-shaving by paying Plaintiffs and Class members only for those hours during which they were scheduled to work, rather than for the actual hours that they worked; and

l)   Whether Defendants caused time-shaving by deducting a mandatory 30 minute break period from the hours of Plaintiffs and Class members each workday, even though Plaintiffs and Class members were not permitted to take any breaks, and were required to work throughout their shifts.

## **STATEMENT OF FACTS**

### *Plaintiff ARTHUR CHANG*

27.   In or around October 2016, Plaintiff CHANG was hired by Defendants to work as a room service delivery person and server at Defendants' Bryant Park Hotel, located at 40 West 40th Street, New York, NY 10018. Plaintiff CHANG's employment by Defendants ended on January 16, 2017.

28.   From the start of his employment by Defendants until late December 2016, Plaintiff CHANG worked approximately nine (9) – eleven (11) hours per day, three (3) days per week, and a "double-shift" of approximately seventeen (17) hours, one day per week, for a total of approximately forty-five (45) – fifty (50) hours per week. Similarly, FLSA Collective Plaintiffs and Class Members also worked at least forty (40) hours each workweek.

29.     From the start of his employment in or around October 2016 until on or about December 31, 2016, Plaintiff CHANG was compensated at a regular hourly rate of $9.00. Then, starting from January 1, 2016 until January 16, 2017, the last day of Plaintiff CHANG's employment by Defendants, Plaintiff CHANG was compensated at a regular hourly rate of $11.00.

**_Plaintiff RYAN SANTOS_**

30.     In or around January 2011, Plaintiff SANTOS was hired by Defendants to work as a server at Defendants' Bryant Park Hotel, located at 40 West 40th Street, New York, NY 10018. Plaintiff SANTOS's employment by Defendants ended in or around January 2012.

31.     Throughout his employment, Plaintiff worked approximately nine (9) – eleven (11) hours per day, three (3) – four (4) days per week, and a "double-shift" of approximately seventeen (17) hours, one day per week, for a total of approximately forty-five (45) – sixty (60) hours per week. Similarly, Class Members also worked at least forty (40) hours each workweek.

32.     Throughout his employment, Plaintiff was compensated at a regular hourly rate of $8.00, with an overtime rate at $12.00.

**_Defendants Subjected Plaintiffs, FLSA Collective Plaintiffs and Class Members To Time Shaving, Resulting in Unpaid Regular and Overtime Wages_**

33.     Throughout Plaintiffs' respective periods employment by Defendants, Defendants subjected Plaintiffs to time-shaving each workday,  as follows:

   a) Throughout Plaintiffs' respective periods of employment, Defendants would automatically deduct 30 minutes from the hours Plaintiffs worked each day as a "mandatory break." However, Plaintiffs were both actually required to work throughout their shifts with no breaks.

b)  Pursuant to the same policy, Defendants also deducted 30 minutes of each shift worked by FLSA Collective Plaintiffs and Class Members even though they similarly weren't allowed to take breaks.

c)  During their respective periods of employment, Plaintiffs were both required to come in approximately 15-30 minutes early for each scheduled shift, and were required to keep working until approximately 15-30 minutes after their scheduled shifts ended. However, Defendants refused to compensate Plaintiffs for such required working time before and after their scheduled hours.

d)  Throughout Plaintiffs' respective employment periods, Defendants refused to allow them  to clock in until their shifts were officially scheduled to start, even though they were each required to perform 15-30 minutes of off-the-clock pre shift work (including cleaning up the debris from prior events and cleaning up messes in the hallways) every day.

e)  .Likewise, Defendants always required Plaintiffs to clock out as soon as their shifts ended. However, after clocking out, Defendants required Plaintiffs to perform additional work for approximately 15-30 minutes each day for which they did not receive compensation. After being required to clock out, Plaintiffs were required by Defendants to perform tasks including briefing the employee replacing them regarding events going on at the Hotel and informing them of all tasks that still needed to be completed, and finishing cleaning and other tasks that they were previously performing.

f)  Like Plaintiffs, FLSA Collective Plaintiffs and Class Members were also required by Defendants to perform work for 15-30 minutes before clocking in and for 15-

30 minutes after clocking out each day, and were never compensated for such time.

34.     Due to Defendants' above described policies of time-shaving, Plaintiffs were both deprived of regular and overtime pay for around five (5) – eight (8) hours each week during their respective periods of employment. Similarly, FLSA Collective Plaintiffs and Class Members were deprived of minimum and overtime wages for five (5) or more hours worked each week.

***Defendants Failed To Pay Plaintiffs, FLSA Collective Plaintiffs and Class Members Spread Of Hours Premium Where Required Under The New York Labor Law***

35.     During their respective periods of employment, Plaintiffs were frequently required to work shifts exceeding ten (10) hours in duration, but were never paid spread of hours premium for working such shifts. Similarly, Class members were frequently required to work shifts exceeding ten (10) hours in duration but were never paid spread of hours.

***Defendants Unlawfully Retained Tips Earned By Plaintiffs, FLSA Collective Plaintiffs and Class Members***

36.     The Bryant Park Hotel features 24-hour room service, as well as frequent banquets, receptions and other events held at the Cellar Bar in the basement of the Hotel. Plaintiffs and Tipped Subclass members performed tipped duties, including delivering food to guest rooms and suites, and acting as servers for events held at the Cellar Bar.

37.     On each room service order, Defendants would deduct and unlawfully retain approximately 80% of each tip provided to Plaintiffs and the other Tipped Subclass members. In order to conceal this deduction from tipped employees, Defendants never notified Plaintiffs or Tipped Subclass members of the actual amount in tips that was provided by guests for each order.

38.     On each room service order, Defendants collected a mandatory service charge from its customers. Plaintiffs and other tipped employees did not receive any portion of the

mandatory surcharge. Defendants and the Bryant Park Hotel management retained 100% of the mandatory surcharge. Prospective customers did not receive any notice that management would retain the mandatory surcharges, and were mislead to believe that Defendants' service charge was a tip to Plaintiffs and other Tipped Subclass Members.

39.     For each private event held at the Cellar Bar, Defendants charged customers a built-in gratuity of 15% of the total bill for holding the event.  However, Plaintiffs and other Tipped Subclass members only received approximately 10% of the total bill from each event, as Defendants retained one-third of the gratuity charged. In order to conceal this deduction from tipped employees, Defendants never notified Plaintiffs or Tipped Subclass members of the amount of the built-in gratuity for each event.

40.     At all relevant times, Defendants instituted and mandated an illegal tip pooling scheme that Plaintiffs and Tipped Subclass Members never agreed to.

41.     At no time during the relevant time periods did Defendants provide Plaintiffs or Class members with proper wage statements, as required by the NYLL. Plaintiff SANTOS and Class Members never received any wage statements. Plaintiff CHANG and other Class members received wage statements; however, such wage statements did not accurately reflect the hours that the Class Members that received them worked worked, as Defendants failed to accurately maintain such records. The pay statements provided to Plaintiff CHANG and other Class Members also incorrectly indicated "Bar Tips" each week, even though Plaintiff CHANG and all Class Members other than bartenders and barbacks never worked behind the bar.

42.     Plaintiffs frequently discussed Defendants' illegal wage and hour policies with co-workers who held different positions at Bryant Park Hotel. Plaintiff CHANG would speak to housekeepers, porters, and employees in other positions while riding in the elevators, while

working during events at Cellar Bar, and while cleaning up following events at Cellar Bar. Plaintiff SANTOS had similar conversations during his employment with employees in a variety of positions. Based on such conversations and his own observations, Defendants' policies of requiring off the clock work, time-shaving, and not paying spread of hours were uniformly applicable to all non-managerial employees at Bryant Park Hotel.

*__Defendants Subjected Plaintiff CHANG to Unlawful Racial Discrimination Resulting In His Constructive Discharge__*

43.     During Plaintiff CHANG's employment by Defendants, Defendants permitted employees to foster a racially hostile work environment. Throughout his employment, Plaintiff CHANG was the only room service employee of Asian ethnicity. Due to his race, he frequently suffered severe discrimination and related verbal abuse. Plaintiff CHANG was constructively discharged from Bryant Park Hotel due to the discrimination that he suffered.

44.     For example, during Plaintiff CHANG's employment by Defendants, supervisory chefs at Bryant Park Hotel frequently made statements to Plaintiff CHANG clearly exhibiting racial and ethnic animus to Plaintiff CHANG on the basis of his Asian ethnicity and Chinese heritage. They would constantly refer to him as "that stupid Chinese," and mock him for being Asian.

45.     Defendants were made aware of this discriminatory conduct after Plaintiff CHANG complained to another supervisory employee, Esther Gonzalez, about the racial insults and abuse that he was constantly subjected to while working. However, Defendants PHIL COLUMBO, MICHAEL STRAUSS and other members of the Hotel's senior management condoned the other employees' racially offensive conduct towards Plaintiff CHANG, and refused to discipline them or do anything else to halt the racial abuse suffered by Plaintiff CHANG.

46.     Because Plaintiff CHANG spoke out about the racially motivated abuse that he suffered while working at Bryant Park Hotel, Defendants PHIL COLUMBO and MICHAEL STRAUSS, the General Manager and Financial Director, and other managerial employees of the Hotel retaliated against him in an effort to force him to quit.

47.     Plaintiff CHANG's job performance was as good as or superior to that of his co-workers. However, following Plaintiff CHANG's complaint about the regular discrimination that he faced on the job, Defendants and other supervisors acting on Defendants' orders specifically and deliberately assigned Plaintiff CHANG to work on events at Bryant Park Hotel that were untipped (such as open bar events) in order to reduce his compensation. Further, around the same time, Defendant MICHAEL STRAUSS began to harass Plaintiff CHANG by accusing him without cause of committing petty infractions of Defendants' rules for employees, such as stealing room service food. Non-Asian employees were never treated by Defendants in this manner.

48.     Starting in approximately late December 2016, Defendant MICHAEL STRAUSS dramatically reduced the shifts that Plaintiff CHANG received each week. Ultimately, by the end of his employment on or about January 17, 2017, even though he was hired to work as a full time employee, Defendants reduced the number of shifts Plaintiff CHANG was assigned to only one shift each week. Non-Asian individuals were not subject to this reduction in hours.

49.     Plaintiff CHANG was forced to quit Defendants' employment due to the racial mockery and abuse that he faced on the job, and because of Defendants' retaliation against him for daring to speak out about the discrimination that he suffered, including their dramatic reduction of his hours to only one shift per week.

50.     Plaintiff CHANG's health suffered due to the extreme emotional stress caused by the racial discrimination he faced while employed by Defendants. This stress was exacerbated by Defendants' retaliation towards him for speaking out, and his eventual constructive discharge due to race. Plaintiff remains chronically depressed due to Defendants' unlawful actions towards him. However, he has been unable to seek the regular psychiatric help that he requires as he no longer has health insurance.

51.     On or about September 25, 2017, Plaintiff CHANG received his "Notice of Right to Sue" from the EEOC for his Charge of Discrimination pursuant to Title VII. *See* **EXHIBIT A** to Original Complaint (Notice of Right to Sue).

52.     Defendants unlawfully retained mandatory service charges represented to customers as gratuities, without providing notice to customers that management was retaining such service charges.

53.     Defendants unlawfully misappropriated tips earned by Plaintiffs and Tipped Subclass members on room service orders and during private events. This resulted from an invalid tip pooling scheme unlawfully instituted and mandated by Defendants.

54.     Defendants unlawfully failed to pay Plaintiffs, the FLSA Collective Plaintiffs, and members of the Class either the FLSA overtime rate (of time and one-half) or the New York State overtime rate (of time and one-half) for hours they worked in excess of forty (40) each workweek.

55.     Defendants unlawfully failed to pay Plaintiffs CHANG, FLSA Collective Plaintiffs and Class members spread of hours premium for working shifts exceeding ten (10) hours in duration.

56.     Defendants unlawfully failed to pay Plaintiffs CHANG, the FLSA Collective Plaintiffs, and members of the Class for all the hours that they worked, due to time shaving.

57.     At no time during the relevant time periods did Defendants provide Plaintiffs or Class members with proper wage statements as required by NYLL. Plaintiff and Class members received fraudulent wage statements that reflected only their scheduled hours, and not the actual hours worked.

58.     Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs, FLSA Collective Plaintiffs and Class members, in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT ON BEHALF OF PLAINTIFFS AND FLSA COLLECTIVE PLAINTIFFS

59.     Plaintiffs realleges and reaver Paragraphs 1 through 58 of this class and collective action Complaint as if fully set forth herein.

60.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).  Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

61.     At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of the FLSA.

62.      At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.00.

63.     At all relevant times, the Defendants engaged in a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half to Plaintiffs and FLSA Collective Plaintiffs for hours worked in excess of forty (40) hours per workweek.

64.     At all relevant times, the Defendants engaged in time-shaving, refusing to compensate Plaintiffs and FLSA Collective Plaintiffs for all hours that he worked each week.

65.     At all relevant times, Defendants engaged in unlawful deduction of gratuities owed to Plaintiffs and Tipped Subclass members;

66.     Plaintiffs are in possession of certain records concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs. Further records concerning these matters should be in the possession and custody of the Defendants. Plaintiffs intend to obtain all records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

67.     Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under the FLSA.

68.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

69.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of, unpaid overtime wages, unpaid wages and overtime premium due to time-shaving, disgorged tips, and an equal amount as liquidated damages.

70.     Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## <u>VIOLATION OF THE NEW YORK LABOR LAW ON BEHALF OF PLAINTIFFS AND CLASS MEMBERS</u>

71.     Plaintiffs reallege and reaver Paragraphs 1 through 70 of this class and collective action Complaint as if fully set forth herein.

72.     At all relevant times, Plaintiffs and Class members were employed by the Defendants within the meaning of the New York Labor Law, §§2 and 651.

73.     Defendants willfully violated Plaintiffs' and Class members' rights by failing to pay them overtime compensation at the rate of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty hours each workweek.

74.     At all relevant times, the Defendants engaged in time-shaving, refusing to compensate Plaintiffs and Class Members for all hours that he worked each week.

75.     At all relevant times, Defendants unlawfully misappropriated tips each by Plaintiffs and the Tipped Subclass.

76.     Defendants failed to properly notify employees of their hourly pay rate and overtime rate, in direct violation of the New York Labor Law.

77.     Defendants failed to provide a proper wage and hour notice, at the date of hiring and annually, to all non-exempt employees per requirements of the New York Labor Law.

78.     Defendants failed to provide proper wage statements with every payment as required by New York Lab. Law § 195(3).

79.     Due to the Defendants' New York Labor Law violations, Plaintiffs and Class members are entitled to recover from Defendants their unpaid overtime premium, unpaid wages and overtime premium resulting from time shaving, misappropriated gratuities, damages for unreasonably delayed payments, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to New York Labor Law.

## COUNT III

## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §§ 2000E *ET SEQ.*

### (RACIAL DISCRIMINATION)

80.     Plaintiff CHANG realleges and reavers Paragraphs 1 through 79 of this Complaint as if fully set forth herein.

81.     Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000E, et seq., prohibits discrimination in the terms, conditions, and privileges of employment on the basis of an individual's race or national origin.

82.     Plaintiff CHANG is an employee and a qualified person within the meaning of Title VII and Defendants are covered employers under the NYSHRL.

83.     Defendants operated a business that discriminated against Plaintiff CHANG in violation of Title VII by subjecting him to a hostile work environment, in the form of constant harassment about his race. Such discriminatory conduct by Defendants ultimately led to Plaintiff CHANG's constructive discharge.

84.     Due to Defendants' violations under Title VII against Plaintiff CHANG, based on discrimination on the basis of race, Plaintiff CHANG is entitled to recover from Defendants: (1) back pay, (2) compensatory damages for emotional distress, (3) punitive damages, and (2)

attorney's fees and costs.

## COUNT IV

## VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW

## (RACIAL DISCRIMINATION)

85.     Plaintiff CHANG realleges and reavers Paragraphs 1 through 84 of this Complaint as if fully set forth herein.

86.     The New York State Human Rights Law ("NYSHRL") prohibits discrimination in the terms, conditions, and privileges of employment on the basis of an individual's race or national origin.

87.     Plaintiff CHANG is an employee and a qualified person within the meaning of NYSHRL and Defendants are covered employers under the NYSHRL.

88.     Defendants operated a business that discriminated against Plaintiff CHANG in violation of the NYSHRL by subjecting Plaintiff CHANG to a hostile work environment, in the form of constant harassment about his race. Such discriminatory conduct by Defendants ultimately led to Plaintiff CHANG's constructive termination by Defendants.

89.     Due to Defendants' violations under the New York State Human Rights Law, as amended, based on discrimination on the basis of race, Plaintiff CHANG is entitled to recover from Defendants: (1) compensatory damages and (2) damages for retaliation.

## COUNT V

## VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW

## (RACIAL DISCRIMINATION)

90.     Plaintiff CHANG realleges and reavers Paragraphs 1 through 89 of this Complaint as if fully set forth herein.

91.     The New York City Human Rights Law ("NYCHRL") prohibits discrimination in the terms, conditions, and privileges of employment on the basis of an individual's race or national origin.

92.     Plaintiff CHANG is an employee and a qualified person within the meaning of NYCHRL and Defendants are covered employers under the NYCHRL.

93.     Defendants operated a business in New York City that discriminated against Plaintiff CHANG in violation of the NYCHRL by subjecting Plaintiff CHANG to a hostile work environment, in the form of constant harassment about his race. Such discriminatory conduct by Defendants directly led to Plaintiff CHANG's termination by Defendants.

94.     Due to Defendants' violations under the New York City Human Rights Law, as amended, based on discrimination on the basis of race, Plaintiff CHANG is entitled to recover from Defendants: (1) compensatory damages, (2) punitive damages, (3) damages for retaliation, and (4) attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves, FLSA Collective Plaintiffs and Class members, respectfully request that this Court grant the following relief:

    a.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law, and the New York State Human Rights Law;

    b.  An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.  An award of damages to Plaintiffs, retroactive to the date of their discharge and prior, for all lost wages and benefits, past and future, back and front pay, resulting from Defendants' unlawful employment practices and to otherwise make him whole for any losses suffered as a result of such unlawful employment practices;

d.  An award of unpaid overtime compensation due under the FLSA and the New York Labor Law;

e.  An award of unpaid minimum wages due under the FLSA and the New York Labor Law;

f.  An award of unpaid compensation due to Defendants' policy of time-shaving;

g.  An award equal to the amount in gratuities misappropriated by Defendants;

h.  An award of statutory penalties as a result of Defendants' failure to comply with New York Labor Law wage notice and wage statement requirements;

i.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation, minimum wage and compensation for all hours worked, pursuant to 29 U.S.C. § 216;

j.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation, minimum wage, compensation for all hours work, and misappropriated gratuities pursuant to the New York Labor Law;

k.  An award of back pay due to Plaintiff CHANG under Title VII;

l.  An award of compensatory damages for emotional distress due to Plaintiff CHANG under Title VII;

m.  An award of punitive damages due to Plaintiff CHANG under Title VII;

n.  An award of compensatory damages due to Plaintiff CHANG under the New York State Human Rights Law;

o.  An award of compensatory damages due to Plaintiff CHANG under the New York City Human Rights Law;

p.  An award of punitive damages due to Plaintiff CHANG under the New York City Human Rights Law;

q.  An award of prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

r.  Designation of Plaintiffs as Representatives of the FLSA Collective Plaintiffs;

s.  Designation of this action as a class action pursuant to F.R.C.P. 23;

t.  Designation of Plaintiffs as Representatives of Class; and

u.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.

Dated: December 22, 2017

Respectfully submitted,

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
Taimur Alamgir (TA 9007)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs, FLSA Collective Plaintiffs and the Class*

By: */s/ C.K. Lee*
        C.K. Lee (CL 4086)