IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

ANDREW CHANG and RYAN SANTOS, on behalf of
themselves, FLSA Collective Plaintiffs and the Class,

                              Plaintiffs,

        against

PHILIPS BRYANT PARK LLC d/b/a BRYANT PARK HOTEL,
PHIL COLUMBO, and MICHAEL STRAUSS,

                              Defendants.

---

CIVIL ACTION NO.: 17 Civ. 8816 (LTS) (SLC)

**REPORT AND RECOMMENDATION**

**SARAH L. CAVE, UNITED STATES MAGISTRATE JUDGE.**

**TO THE HONORABLE LAURA TAYLOR SWAIN, UNITED STATES DISTRICT JUDGE:**

Before the Court is Plaintiffs' Motion for an Order (1) Conditionally Certifying Settlement

Class and Collective Action, (2) Granting Preliminary Approval to Proposed Class Action

Settlement and Plan of Allocation, (3) Directing Dissemination of Notice and Related Materials

to the Class, and (4) Setting Date for Fairness Hearing and Related Dates (the "Motion for

Preliminary Approval") (ECF No. 53).[1]

For the reasons set forth below, I respectfully recommend that Plaintiffs' Motion be

**GRANTED**.

---

[1] In connection with plaintiffs' Motion for Preliminary Approval, I have considered: Plaintiffs' Memorandum of Law
in Support (ECF No. 54); the Declaration of C.K. Lee in Support and annexed exhibits (ECF No. 55); Supplementary
Declaration of Plaintiffs' Counsel in Support of Plaintiffs' Unopposed Motion for Preliminary Class Settlement
Approval (ECF No. 62) and annexed exhibits (ECF No. 64); Complaint (ECF No. 1); First Amended Complaint (ECF
No. 25); and Answer (ECF No. 27).

## I.      **PROCEDURAL HISTORY**

On November 13, 2017, plaintiff Andrew Chang commenced this putative class and collective action by filing a complaint against defendants Philips Bryant Park LLC d/b/a Bryant Park Hotel, Phil Columbo, and Michael Strauss (together, "Defendants").  (ECF No. 1).  Plaintiff alleged that Defendants employed him and the other putative class members as non-exempt, hourly employees, but failed to pay (1) overtime premiums, (2) unpaid wages due to time shaving, (3) tips that Defendants illegally retained from private catering events, (4) portions of tips that Defendants illegally deducted and retained in connection with room service orders, (5) liquidated damages, and (6) attorneys' fees and costs.  (Id. at ¶¶ 1–2).  Plaintiff asserted claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA") and the New York Labor Law §§ 2 et seq. ("NYLL").  (Id. at ¶¶ 1–2, 56–76).  Plaintiff Chang also alleged a claim on behalf of himself only that Defendants discriminated against him based on his race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000E et seq., New York State Human Rights Law, and New York City Human Rights Law.  (Id. at 77–91).  Before Defendants filed any answer, Plaintiff filed a First Amended Class and Collective Action Complaint, adding Ryan Santos as a named plaintiff.  (ECF No. 25).  Thereafter, Defendants filed their answer.  (ECF No. 27).

On February 13, 2018, the parties attended an initial conference before Magistrate Judge Henry B. Pitman, who subsequently entered a pretrial scheduling order.  (ECF No. 29).  On March 26, 2018, Plaintiffs filed a motion to certify a conditional collective action pursuant to 29 U.S.C. § 216(b).  (ECF No. 32).  The parties then pursued mediation on a class-wide basis, and on April 3, 2018, Magistrate Judge Pitman ordered a stay of proceedings pending mediation.  (ECF No. 36).

On July 30, 2018, the parties engaged in a full-day, in-person mediation with Carol Wittenberg of JAMS that resulted in the parties reaching an agreement on the principal terms of a settlement.  (ECF No. 54 at 2).

On January 10, 2019, Plaintiffs filed the Motion for Preliminary Approval, which Defendants have not opposed.  (ECF Nos. 53, 54).  Following an initial review of the Motion for Preliminary Approval, Magistrate Judge Pitman found the submissions insufficient, denied the motion without prejudice, and ordered the parties to submit a revised application containing sufficient information to permit an informed assessment of the fairness of the proposed settlement.  (ECF No. 60).  In response to Magistrate Judge Pitman's order, Plaintiffs submitted the Supplementary Declaration of Plaintiffs' Counsel in Support of Plaintiffs' Unopposed Motion for Preliminary Class Settlement Approval and accompanying exhibits.  (ECF Nos. 62, 64).

## II.   FACTUAL BACKGROUND

### A.   Plaintiffs and the Proposed Collective and Class Actions

Plaintiffs allege the following facts in the First Amended Complaint.  (ECF No. 25).[2]  From October 2016 until January 16, 2017, Plaintiff Andrew Chang[3] worked as a room service delivery person and server at Defendant Bryant Park Hotel, located at 40 West 40th Street in New York City.  (ECF No. 25 ¶ 27).  From the beginning of his employment until late December 2016, Plaintiff Chang worked about nine to eleven hours, three days each week, plus a "double-shift" of 17 hours one day a week, for a total of 45–50 hours worked each week.  (Id. ¶ 28).  From the start

---

[2] Defendants have disputed and continue to dispute Plaintiffs' allegations and deny any liability (ECF No. 27), and therefore, nothing in the Court's description of Plaintiffs' allegations should be deemed as a conclusive determination of any facts for purposes of any proceeding in this action.

[3] In the First Amended Complaint (ECF No. 25), Plaintiff Chang's first name is twice indicated as "Arthur" instead of "Andrew," but I assume for purposes of this Report and Recommendation that the correct name, as set forth in the original Complaint (ECF No. 1) and the caption of Plaintiffs' subsequent filings, is Andrew Chang.

of his employment in October 2016 until December 31, 2016, Defendants paid him $9.00 per hour, and from January 1, 2017[4] until January 16, 2017, $11.00 per hour.  (Id. ¶ 29).

From January 2011 until January 2012, Plaintiff Ryan Santos worked as a server at Defendant Bryant Park Hotel, nine to eleven hours per day, three to four days per week, and a "double-shift" of 17 hours once per week, for a total of 45 to 60 hours per week.  (Id. ¶¶ 30–31). Defendants paid him a regular hourly rate of $8.00 with an overtime rate of $12.00.  (Id. ¶ 32). Plaintiffs allege that the other potential class members also worked at least 40 hours per week. (Id. ¶ 28).

Plaintiffs allege, based on their discussions with co-workers in other positions at Defendant Bryant Park Hotel, the Defendants uniformly applied the following illegal wage and hour policies described above to all non-managerial employees.  (Id. ¶ 42).

### 1.  Time-shaving practices

Plaintiffs allege that Defendants engaged in several types of "time-shaving" practices that deprived Plaintiffs of regular and overtime pay for five to eight hours each week of employment, such as by automatically deducting 30 minutes for a "mandatory break" even though Plaintiffs were required to work through shifts without breaks, and by refusing to compensate Plaintiffs for the 15–30 minutes they were required to come in before and stay after the end of each shift to perform pre- and post-shift tasks, respectively.  (Id. ¶ 33).  These practices allegedly deprived

---

[4] The First Amended Complaint states "starting from January 1, 2016 until January 17, 2017 . . . Plaintiff Chang was compensated at a regular hourly rate of $11.00."  (ECF No. 25 at ¶ 29).  Because the pleading otherwise alleges that Plaintiff Chang did not begin working for Defendants until October 2016, I assume that this allegation contains a typographical error and should instead state "starting from January 1, 2017 . . ."

the FLSA Collective Plaintiffs and the Class Members of minimum and overtime wages for five or more hours each week.  (Id. ¶ 34).

### 2.  Failure to pay spread-of-hours premiums

Plaintiffs allege that they, as well as the Class Members, were required to work shifts longer than ten hours, but were not paid spread-of-hours premiums for these shifts.  (Id. ¶ 35).

### 3.  Unlawful retention of tips

Plaintiffs allege that on each room service order, Defendants would deduct and unlawfully retain 80% of each tip that Plaintiffs and the other Tipped Subclass members should have earned, as well as 100% of every mandatory service surcharge.  (Id. at ¶¶ 36–38).  For private events, Defendants charged customers a built-in gratuity of 15% of the total bill, but paid Plaintiffs and other Tipped Subclass members only 10% of the total bill, retaining one-third of the gratuity for themselves.  (Id. ¶ 39).

### 4.  Failure to provide proper wage statements

Plaintiffs allege that Defendants failed to provide them with proper wage statements. Plaintiffs Santos and some Class Members never received any wage statements, while the wage statements that Plaintiff Chang and other Class Members received contained inaccuracies, such as indicating "Bar Tips" when they did not work behind the bar.  (Id. ¶ 41).

### B.  Plaintiff Chang's Racial Discrimination and Constructive Discharge Claim

Plaintiff Chang alleges that he was the only room service employee of Asian descent and that Defendants permitted other employees to foster a racially hostile work environment by subjecting him to severe discrimination and verbal abuse that led to his constructive discharge. (Id. ¶ 43).  Plaintiff Chang alleges that he was subjected to racial and ethnic slurs based on his

Asian ethnicity and Chinese heritage.  (Id. ¶ 44).  He alleges that he made Defendants aware of the discriminatory conduct by complaining to a supervisory employee, but Defendants failed to intercede and condoned the other employees' racially offensive conduct.  (Id. ¶ 45).  After Plaintiff Chang complained about the racially motivated abuse, Defendants Columbo and Strauss retaliated by assigning him to work on untipped events to reduce his compensation, by accusing him of committing petty infractions, and by reducing his shift to one per week.  The retaliatory actions forced Plaintiff Chang to quit his employment and caused related detrimental health effects.  (Id. ¶¶ 46–50).  On September 25, 2017, Plaintiff Chang received from the Equal Employment Opportunity Commission his "Notice of Right to Sue" for his charge of discrimination under Title VII.  (Id. ¶ 51; ECF No. 1, Ex. A).

**C.  The Proposed Settlement**

The parties agreed in the Settlement Agreement to settle this action for the Gross Settlement Amount of $975,000.  (ECF No. 54 at 3; ECF No. 55-1 at 5).  In conjunction with the settlement, Plaintiffs request, and Defendants have agreed not to oppose, certification of a class action under Federal Rule of Civil Procedure 23(a) and (b)(3), and a collective action under FLSA § 216(b) of Class Members, defined as: "Named plaintiffs and up to 367 current and former hourly, non-exempt employees employed by Defendants from November 13, 2011 to July 30, 2018."  (ECF No. 54 at 2–3).

The Settlement Amount covers Class Members' awards, service payments, a release payment, attorneys' fees and costs, and costs of settlement administration (not to exceed $30,000).  (Id.).  The "Net Settlement Amount" represents the $975,000 less (1) reasonable costs of settlement administration, (2) the court-approved amount of attorneys' fees and costs, and

(3) the court-approved amount of the service payments and release payment. (Id.). In addition to the $975,000 settlement fund, Defendants agree to pay the employer's share of all state and federal payroll taxes with respect to the amounts treated as wages. (Id.; ECF No. 55-1 at 13).

The Settlement Agreement provides that, within thirty days of the District Court's entry of an order granting preliminary approval, notice will be mailed to the last known home address of each Class Member using information Defendants are to provide. (ECF Nos. 54 at 1; 55-1 at 6–7). The notice will provide information about how Class Members can opt out or object to the settlement. (ECF No. 55-1, Ex. A). If the District Court approves the settlement, every Class Member who does not opt out (a "Qualified Class Member") will receive a settlement check that is proportional to the duration of his or her employment during the Class Period.[5] (ECF No. 54 at 4; ECF No. 55-1 at 13). Residual funds from uncashed checks shall first be applied to unforeseen expenses, and any remaining funds thereafter shall revert to Defendants. (ECF No. 54 at 4; ECF No. 55-1 at 11).

The two Plaintiffs will each apply for a service award of $1,000 (for a total of $2,000) in recognition of the services they provided to the class, which include assisting with preparing the pleadings and factual investigation of the claims. (ECF No. 54 at 5; ECF No. 55-1 at 12). Plaintiff Chang will apply for a release payment of $20,000 in exchange for his global release of all claims, including discrimination claims. (ECF No. 54 at 5; ECF No. 55-1 at 4, 12). Defendants will not contest the service awards or release payments. (ECF No. 54 at 5).

---

[5] Each settlement check will contain the following endorsement: "By my endorsement of this check, I opt in to the lawsuit S.D.N.Y. 17-cv-8816, for settlement purposes only, and release all of my claims as described in the class settlement agreement." (ECF No. 55-1 at 14).

The parties will retain a third-party Claims Administrator, Rust Consulting, to mail the notice to Class Members, receive and process objections and opt-out notices, calculate each Class Member's settlement award and tax withholdings, pay out the Net Settlement Amount, provide weekly reports detailing the results of the class mailings and participation, and answer Class Member inquiries.  (ECF No. 54 at 5–6; ECF No. 55-1 at 6).  The Claims Administrator must agree to a reasonable cap on fees and expenses, which the parties estimate to be $30,000.  (ECF No. 54 at 6; ECF No. 55-1 at 12).

Once the Judgment and Final Approval are entered, Plaintiffs and each Class Member who did not timely opt out of the settlement will release Defendants from all wage and hour and other employment-related claims that have been brought or could have been brought under the NYLL against Defendants (the "Released Rule 23 Class Claims").  (ECF No. 55-1 at 4–5, 13).  Similarly, once a Class Member endorses and deposits their settlement check, they will effectively opt in to the FLSA collective action and release Defendants from all FLSA claims, known or unknown.  (ECF No. 55-1 at 13–14).

The parties propose the following steps for the District Court's final approval of the proposed settlement:

1.  Within 14 calendar days after the District Court's entry of an order granting Preliminary Approval of the settlement, Defendants will provide the Claims Administrator and Class Counsel with electronic-form lists of names and other identifying information of all Class Members.

2.  Within 30 days after the entry of the order granting Preliminary Approval, the Claims Administrator will mail the Notices to Class Members.

3.  Class Members will then have 45 days after the mailing date of the Notices to opt out of or object to the settlement (the "Opt-Out Period").  No later than 30 days after the end of the Opt-Out Period, Plaintiffs will file a Motion for

Judgment and Final Approval of Settlement and a Motion for Attorneys' Fees and Costs.

4. If the District Court grants Plaintiffs' Motion for Final Approval, the District Court would then enter Judgment consistent with the Settlement Agreement and dismiss the case with prejudice.

(ECF No. 54 at 7; ECF No. 55-1 at 6–8).

## III.   LEGAL STANDARDS

### A.   FLSA Section 216(b) Conditional Certification

Section 216(b) of the FLSA provides, in pertinent part:

An action to recover . . . liability . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).  While FLSA does not prescribe any procedures for approval of actions brought collectively by those who are "similarly situated," courts have long construed §216(b) to grant district court authority to order that notice be given to potential plaintiffs informing them of the option to join the suit.  See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989) ("[D]istrict courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs."); Braunstein v. E. Photographic Labs., Inc., 600 F.2d 335, 336 (2d Cir. 1978) (per curiam) ("Although one might read the [FLSA], by deliberate omission, as not providing for notice . . . it makes more sense, in light of the 'opt-in' provision of § 16(b) of the Act, 29 U.S.C. § 216(b), to read the statute as permitting, rather than prohibiting, notice in an appropriate case.").  Although orders authorizing notice are sometimes referred to as orders "certifying" a collective action, FLSA does not contain a certification mechanism.  Myers v. Hertz Corp., 624 F.3d 537, 555 n.10 (2d Cir. 2010).  Thus, where a court refers to "certifying" a collective

action, it means only that the court has exercised its discretionary power "to facilitate the sending of notice" to similarly situated individuals.  Id.  The approval of a collective action is thus equivalent to a "'case management' tool for district courts to employ in 'appropriate cases.'"  Id. (quoting Hoffmann-La Roche, 493 U.S. at 169).

The Second Circuit has approved a two-step process to evaluate whether to approve a collective action.  Id. at 555.  First, the court must make "an initial determination" whether to send notice to potential opt-in plaintiffs who may be "similarly situated" to the named plaintiffs as to whether the alleged FLSA violation occurred.  Id.; Damassia v. Duane Reade, Inc., No. 04 Civ. 8819 (GEL), 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006).  Plaintiffs must make a "modest factual showing" that they and the potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law."  Myers, 624 F.3d at 555 (quoting Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997)).  The court considers the pleadings as well as supporting affidavits to evaluate whether the named plaintiffs have made the "modest factual showing" that they are similarly situated to potential opt-in plaintiffs vis-à-vis the defendants' unlawful employment practices.  See Almonte v. Marina Ice Cream Corp., No. 16 Civ. 660 (GBD), 2016 WL 7217258, at *1 (S.D.N.Y. Dec. 8, 2016).  This standard of proof, although low, "cannot be satisfied simply by unsupported assertions."  Myers, 624 F.3d at 555 (internal citation omitted).

At the second step, on a more complete record, the district court determines whether a "collective action" may proceed based on plaintiffs having shown that the plaintiffs who opted in are actually "similarly situated" to the named plaintiffs.  Id.  If the court is not convinced, it may "de-certify" the action and dismiss the opt-in plaintiffs' claims without prejudice.  Id.

### B. Rule 23 Class Action Certification

"Before [class] certification is proper for any purpose—settlement, litigation, or otherwise—a court must ensure that the requirements of Rule 23(a) and (b) have been met." Denney v. Deutsche Bank AG, 443 F.3d 253, 270 (2d Cir. 2006).  To certify a class under Rule 23(a), a court must find that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims . . . of the representative parties are typical of the claims . . . of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a); Long v. HSBC USA Inc., No. 14 Civ. 6233 (HBP), 2015 WL 5444651, at *5 (S.D.N.Y. Sept. 11, 2015).  Provided these four criteria are met, class certification is appropriate if the plaintiffs then establish that the action satisfies one of the three alternative criteria in Rule 23(b).  Id.

Plaintiffs argue that the proposed class meets the requirements of Rule 23(b)(3), which permits a class action to be maintained if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Plaintiffs bear the burden of establishing each of these elements by a preponderance of the evidence.  See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 202 (2d Cir. 2008).  The class should not be certified unless, after a "rigorous analysis," the court is satisfied that plaintiffs have met the requirements of Rule 23. In re Initial Pub. Offerings Secs. Litig., 471 F.3d 24, 33 (2d Cir. 2006) (internal citations omitted).

The fact that the parties have settled does not mandate class certification, and the requirements of Rule 23 "should not be watered down by virtue of the fact that the settlement

is fair or equitable." <u>Denney</u>, 443 F.3d at 270.  Therefore, "[b]efore approving a class settlement agreement, a district court must first determine whether the requirements for class certification in Rule 23(a) and (b) have been satisfied."  <u>In re Am. Int'l Group, Inc. Secs. Litig.</u>, 689 F.3d 229, 238 (2d Cir. 2012).

**C.**  **Standards for Evaluating the Proposed Settlement**

Under Rule 23(e), judicial approval is required for a class action settlement to become effective.  Fed. R. Civ. P. 23(e).  Although settlements are generally favored, "the court may approve a class action settlement only if it is fair, adequate, and reasonable, and not a product of collusion."  <u>Lizondro-Garcia v. Kefi LLC</u>, 300 F.R.D. 169, 178 (S.D.N.Y. 2014) (internal citation omitted).  To evaluate fairness, a court looks to both the settlement's terms as well as the process by which the parties negotiated it.  <u>See</u> <u>Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.</u>, 396 F.3d 96, 116 (2d Cir. 2005).

With regard to procedural fairness, a class settlement "reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery" is presumptively fair, reasonable, and adequate.  <u>Id.</u>  With regard to substantive fairness, courts in this Circuit employ the nine-factor test set forth in <u>City of Detroit v. Grinnell Corp.</u>, 495 F.3d 448, 463 (2d Cir. 1974).  <u>See also</u> <u>Wal-Mart Stores, Inc.</u>, 396 F.3d at 117; <u>Henry v. Little Mint, Inc.</u>, No. 12 Civ. 3996 (CM), 2014 WL 2199477, at *7 (S.D.N.Y. May 23, 2014).  The <u>Grinnell</u> factors include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Wal-Mart Stores, Inc., 396 F.3d at 117 (citing Grinnell, 495 F.3d at 463).

Preliminary approval of a settlement agreement requires only an "initial evaluation" of the fairness of the proposed settlement based on written submissions and an informal presentation by the settling parties.  Clark v. Ecolab, Inc., No. 07 Civ. 8623 (PAC) et al., 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009).  The court determines "whether notice of the proposed settlement . . . should be given to class members in such a manner as the court directs, and an evidentiary hearing scheduled to determine the fairness and adequacy of the settlement." Lizondro-Garcia, 300 F.R.D. at 179. (quoting Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 11.25 (4th ed. 2002)).  "[T]he court need only find that there is probable cause to submit the settlement to class members and hold a full-scale hearing as to its fairness."  Clark, 2009 WL 6615729, at *3 (internal citations and alterations omitted).[6]  If the court determines that the proposed settlement "appears to fall within the range of possible approval," it should order the notice of the settlement distributed to the class.  Id. (internal citation omitted).

The settlement of a FLSA collective action also requires judicial approval to become effective.  See Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).  The "modest factual showing" required for conditional approval of a collective action "is very low and 'considerably less stringent than the requirements for class certification under Rule 23.'" Jackson v. Bloomberg, L.P., 298 F.R.D. 152, 158–59 (S.D.N.Y. 2014) (quoting Poplawski v. Metroplex on the Atl., LLC, No. 11 Civ. 3765, 2012 WL 1107711, at *3 (E.D.N.Y. Apr. 2, 2012)).  Thus, a court examines a FLSA collective action "with less scrutiny than a class action settlement; the court

---

[6] Courts often grant preliminary approval without a hearing or court appearance, finding it sufficient to evaluate the settling parties' written submissions and informal presentation.  See Tiro v. Pub. House Invs., LLC, No. 11 Civ. 7679 (CM), No. 11 Civ. 8249( CM), 2013 WL 2254551, at *1 (S.D.N.Y. May 22, 2013).

simply asks whether the proposed settlement reflects a fair and reasonable compromise of disputed issues that were reached as a result of contested litigation." Lizondro-Garcia, 300 F.R.D. at 179 (citing Wolinsky, 900 F. Supp. 2d at 335).

IV.     ANALYSIS

### A.  The Settlement Is Fair, Reasonable, And Adequate

### 1.  The complexity, expense, and likely duration of the litigation

The proposed class consists of approximately 369 potential Class Members (including the two Plaintiffs). (ECF No. 54 at 3). Although Defendants have agreed not to contest class certification and collective action status for purposes of settlement, in the absence of a settlement, Defendants likely would contest both. (ECF No. 54 at 2). The parties have exchanged some documentary discovery, but further litigation would include depositions, discovery motion practice, expert discovery, class certification proceedings, and summary judgment motion practice, all of which would impose a significant cost on the parties. (ECF No. 54 at 10). The present settlement has been pending for over two years, during which time the parties do not appear to have engaged in any substantive work on this case, so to resume now would require the parties, in effect, to wake a sleeping giant at additional expense and delay.

In contrast, the settlement would make monetary relief available to Class Members in the relative near-term, in an efficient manner overseen by the Claims Administrator. The first Grinnell factor thus weighs in favor of preliminary approval of the settlement.

### 2.  The reaction of the class

Because the Class Members have not yet received notice of the settlement, it remains too early to evaluate the second Grinnell factor. If the District Court grants conditional

approval, the parties should collect and present sufficient evidence to allow the District Court to analyze this factor fully at the final approval hearing.  See, e.g., Henry, 2014 WL 2199427, at *4–5, 8 (parties submitted, in advance of final approval hearing, results of distribution of notice to class).

### 3.  The stage of the proceedings and amount of discovery

The parties embarked on settlement negotiations following the pleading stage and just before substantive discovery commenced.  (See supra, p. 6).  In doing so, they conserved considerable resources that might otherwise have been consumed by lengthy discovery. Nevertheless, some substantive exchange of information has occurred.  Plaintiffs' counsel conducted interviews with the two Plaintiffs and other potential Class Members "to determine the hours they worked, the nature of any potential wage claims they had against Defendants, the wages they were paid, the nature of their daily activities, and other information relevant to their claims."  (ECF No. 54 at 11).  Defendants produced employment and payroll data, personnel documents, and corporate documents, totaling the thousands of pages, which Plaintiffs' counsel reviewed.  (Id.; ECF No. 55 at 3).  The parties thus exchanged a sufficient amount of information to have been able to evaluate the settlement in comparison to the risks of litigation.  Henry, 2014 WL 2199427, at *8 (review of spreadsheets and hundreds of pages of hard copy documents met the standard to show that counsel "had an adequate appreciation of the merits of the case before negotiating.") (internal citation omitted).  Therefore, the third Grinnell factor weighs in favor of settlement.

### 4.  The risks of establishing liability and damages

To assess the risks of establishing liability and damages, a court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." Id. If this case were to proceed to trial, Plaintiffs would face the risks of proving liability and damages under the FLSA and NYLL, which is inherently fact-intensive. Id. For example, Plaintiffs would need to prove their dates and hours of employment, that Defendants withheld tips to which Plaintiffs were otherwise entitled, and that the wage statements they received were deficient. See, e.g., Jiao v. Chen, No. 03 Civ. 165 (DF), 2007 WL 4944767, at *2 (S.D.N.Y. Mar. 30, 2007) (employee seeking recovery of unpaid wages "has the burden of proving that he performed work for which he was not properly compensated."). Only if Plaintiffs were able to prove that Defendants' violations were "willful" would they be able to recover for unpaid wages reaching back three years. 29 U.S.C. § 255(a). Plaintiffs would also face the risks posed by Defendants' defenses, which include, inter alia, arguments that Plaintiffs' claims are time-barred, that the activities for which they seek recovery are not compensable, that Defendants are entitled to set-offs, and that class treatment is not appropriate. (ECF No. 27 at 2; ECF No. 54 at 2).

Plaintiffs' counsel, who are experienced wage and hour litigators (ECF No. 54 at 2), are aware of these risks and the "significant factual development" they would need to pursue to overcome them and establish Defendants' liability and damages. (ECF No. 54 at 12). By reaching the proposed settlement, Plaintiffs have alleviated this uncertainty, and therefore, the fourth and fifth Grinnell factors weigh "heavily in favor of preliminary approval." Henry, 2014 WL 2199427, at *9.

**5.   The risks of maintaining the class through trial**

Defendants have raised the defense that this action is not suitable for class treatment

(ECF No. 27 at 2), and their non-opposition to class treatment is only for purposes of

settlement; they would oppose any conditional certification motion and any motion to certify

Plaintiffs' NYLL claims.  (ECF No. 54 at 12).   Defendants would likely argue that questions of law

and fact affecting individual class members would predominate over common questions, and

that none of the Defendants acted or refused to act on grounds generally applicable to the

class, rendering class treatment inappropriate.  (Id.).  Given the number of categories of

employment positions in the proposed class and the length of the proposed class period, the

possibility of individualized questions predominating over common questions does, at least,

exist.  Therefore, the sixth Grinnell factor at a minimum does not weigh against approval, and

may in fact lean in favor.  See Henry, 2014 WL 2199427, at *9 (when "it cannot be said that

there is no risk of decertification[,] at the very least this factor does not augur against

approval.").

**6.   Defendants' ability to withstand a greater judgment**

Although the parties' submission does not detail Defendants' financial position in

comparison to a potential judgment, it may be fair for the District Court to infer that the during

the day-long, in-person mediation before an experienced mediator, the parties did negotiate a

settlement amount taking into account "Defendants' ability to pay a settlement that would

compensate the class for their alleged unpaid wages and allow Defendants to remain in

business."  Henry, 2014 WL 2199427, at *9.   In any event, Defendants' potential ability to pay a

judgment greater than the settlement amount "standing alone, does not suggest that the

settlement is unfair." Id. (internal citation omitted).  The parties should be mindful to elaborate on this sixth Grinnell factor during further proceedings before the District Court, but, at this juncture it does not impede a grant of preliminary approval.  Id.

### 7.  The size of the settlement fund in relation to the best possible recovery and the attendant risks of litigation

Plaintiffs' counsel has determined that the $975,000 Settlement Amount "represents a good value given the attendant risks of litigation."  (ECF No. 54 at 13).  The Settlement Amount is a substantial number that will be allocated proportionately, according to each Qualified Class Member's duration of employment during the Class Period, such that those who worked for longer periods of time will receive greater proportionate payments.  (Id.).  The Settlement Amount appears to reflect a balancing of the strengths of the Plaintiffs' claims against the risks that they will not prevail at trial.  Danieli v. IBM, No. 08 Civ. 3688 (SHS), 2009 WL 6583144, at *5 (S.D.N.Y. Nov. 16, 2009).  Therefore, the proposed settlement appears to fall within the "range of reasonableness" under the eighth and ninth Grinnell factors.  Henry, 2014 WL 2199427, at *9–10.

Accordingly, I find that the Grinnell factors taken cumulatively weigh in favor of preliminarily approving the proposed settlement.

### B.  The Service Awards And Release Payment Are Appropriate

In a wage and hour case in which a lower-level employee takes on the responsibility to prosecute an action against a former employer, at considerable personal risk, a service award is appropriate.  See Roberts v. Texaco, Inc., 979 F. Supp. 185, 200 (S.D.N.Y. 1997); Henry, 2014 WL 21994427, at *10.  Such is the case here with Plaintiffs Chang and Santos, who each seek a service award in the amount of $1,000 (totaling $2,000) in recognition of their work and

willingness to represent the Class.  (ECF No. 54 at 5).  Both Plaintiffs assisted in preparing the

pleadings and investigating the facts of the case.  (Id.).  They also participated in the day-long,

in-person mediation that resulted in the Settlement Agreement.  (ECF No. 55-1 at 3).  The

service awards they seek are smaller than service awards that have been found reasonable and

approved by other courts in this District.  See, e.g., Sewell v. Bovis Lend Lease, Inc., No. 09 Civ.

6548 (RLE), 2012 WL 1320124, at *14–15 (S.D.N.Y. Apr. 16, 2012) (finding reasonable and

approving service awards of $15,000 and $10,000 in wage and hour litigation); Henry, 2014 WL

2199427, at *10–11 (finding reasonable and approving service awards of up to $10,000).

In addition, Plaintiff Chang seeks a Release Payment of $20,000 in exchange for his

global release of all claims, including his discrimination claims, against Defendants.  (ECF No. 54

at 5).  This Release Payment represents Plaintiff Chang's decision to release additional,

potentially meritorious individual claims, which may qualify as a "special circumstance"

justifying an additional payment.  See Roberts, 979 F. Supp. at 200–01 (explaining that "special

circumstances" justifying additional payment to named plaintiff include "any other burdens

sustained by that plaintiff in lending himself or herself to the prosecution of the claim").

Accordingly, I find that the Service Awards and the Release Payment are appropriate,

and I recommend that the District Court approve them.

### C.  Conditional Certification Of The Rule 23 Class Is Appropriate

### 1. Rule 23(a) requirements

#### a.  Numerosity

Rule 23(a)(1) requires that the members of the proposed class be "so numerous that

joinder of all members is impracticable."  Fed. R. Civ. P. 23(a).  A definitive tabulation of class

members is not required for certification, and "numerosity is generally presumed when the prospective class consists of 40 members or more." Alcantra v. CNA Mgmt., Inc., 264 F.R.D. 61, 64 (S.D.N.Y. 2009). Plaintiffs counsel anticipates that there are approximately 367 Class Members in addition to the two Plaintiffs. (ECF No. 54 at 15). The numerosity requirement is therefore met.

### b. **Commonality**

Rule 23(a)(2) requires that there be questions of law or fact common to the class. This commonality requirement means that the plaintiff must "demonstrate that the class members have suffered the same injury." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011) (internal citations omitted). The court assesses whether the common questions are capable of generating "common answers apt to drive the resolution of the litigation." Id. Even if the plaintiffs' individual circumstances differ, commonality may exist if the plaintiffs' "injuries derive from a unitary course of conduct by a single system[.]" Marisol A. v. Guiliani, 126 F.3d 372, 377 (2d Cir. 1997).

Plaintiffs identify several common issues, including: (i) whether Defendants failed to pay Plaintiffs and the Class Members for all hours worked and proper overtime, and failed to provide them with wage statements and wage notices as required by New York law; (ii) whether Defendants employed Plaintiffs and the Class Members under the FLSA and NYLL; and (iii) the nature of Defendants' policies and practices regarding the types of work for which Defendants allegedly failed to pay Class Members properly. (ECF No. 54 at 15). Because the claims of the Plaintiffs and the Class Members derive from the same alleged practices of the

Defendants, these questions "will generate answers that will help resolve the claims in the class action." Lizondro-Garcia, 300 F.R.D. at 175.  Therefore, the commonality requirement is met.

      **c.**  **Typicality**

The typicality requirement of Rule 23(a)(3) ensures that "maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Marisol A., 126 F.3d at 376 (internal citation omitted).  The typicality requirement is met where the named plaintiff's claim arises from "the same factual and legal circumstances that form the bases of the class members' claims."  Clark, 2009 WL 6615729, at *5.

Plaintiffs here meet the typicality requirement because they were employed by Defendants in the same positions, subjected to the same alleged overtime, time-shaving, and spread-of-hours practices, and failed to receive proper wage notices and wage statements as members of the proposed NYLL class.  (ECF No. 25 ¶¶ 18–26).  Therefore, the typicality requirement is met.  See Lizondro-Garcia, 300 F.R.D. at 175.

      **d.**  **Adequacy**

Rule 23(a)(4) requires that the named plaintiffs "possess the same interest[s] and suffer the same injur[ies] as the class members."  In re Literary Works in Elec. Databases Copyright Litig., 654 F.3d 242, 249 (2d Cir. 2011) (internal citation omitted).  Adequacy contains two elements:  (1) class counsel must be qualified and able to conduct the proposed litigation, and (2) the class representative must not have interest antagonistic to those of the other class members.  In re Drexel Burnham Lambert Grp., Inc., 960 F.2d 285, 291 (2d Cir. 1992).

Plaintiffs' counsel, C.K. Lee, represents that he has been substantially involved in prosecuting wage and hour class and collective actions for over ten years, and has been appointed as lead counsel in over 70 wage and hour cases that have been certified as class and/or collective actions.  (ECF No. 55 at 2).   In light of counsel's record in other cases and able representation to date in this case, I conclude that Plaintiffs' counsel has and will adequately represent the interests of the Class.

Plaintiffs' counsel also represents that "[t]here is no evidence that Plaintiffs have interests that are antagonistic or at odds with Class Members," but rather, their interests are "clearly aligned with the interests of the class."  (ECF No. 54 at 16).

Based on these representations, I conclude that Plaintiffs have preliminarily satisfied both elements of the adequacy requirement of Rule 23(a)(4).  See Lizondro-Garcia, 300 F.R.D. at 176.[7]

## 2.  Rule 23(b)(3) requirements

In addition to the requirements of Rule 23(a), Plaintiffs must demonstrate under Rule 23(b)(3) "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

---

[7] To the extent that there is an implied element of ascertainability for a Rule 23 class action, see Fears v. Wilhemina Model Agency, Inc., No. 02 Civ. 4911 (HB), 2003 WL 21659373, at *2 (S.D.N.Y. July 15, 2003), the records Defendants have provided or will provide will likely contain sufficient information regarding employees' names, titles, pay rates, and dates of employment to enable Plaintiffs' counsel and the Claims Administrator to ascertain the Class Members.  See Lizondro-Garcia, 300 F.R.D. at 176.

a. **Predominance**

The predominance requirement of Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," and is a "more demanding criterion than the commonality inquiry under Rule 23(a)."  Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (2d Cir. 2002) (internal citations omitted).  It is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  Id.

Plaintiffs argue that Class Members' common factual allegations and common legal theory "that Defendants illegally shaved their time and failed to pay them for all hours worked" and for overtime will predominate over any factual or legal variations that may exist among Class Members.  (ECF No. 54 at 17).  Their improper wage notice and wage statement claim involves other common questions of fact and common legal theories that will predominate over any individual questions.  (Id.)

At the core of this dispute is whether Defendants employed policies and practices that denied overtime, spread-of-hours premiums, and tips, and failed to provide sufficient wage notices and wage statements.  (ECF No. 54 at 17).  At this stage of the proceedings, the allegations are that Defendants employed these policies and practices uniformly, and therefore the questions about whether those practices were legal and injured the Class Members are appropriate for class treatment such that the predominance requirement is met.  See Lizondro-Garcia, 300 F.R.D. at 177.

b.  **Superiority**

To determine whether class-wide adjudication is "superior to other available methods

for fairly and efficiently adjudicating the controversy," a court examines four non-exhaustive

factors:  (i) "class members' interests in individually controlling the prosecution . . . of separate

actions," (ii) "the extent and nature of any litigation concerning the controversy already begun

by . . . class members," (iii) "the desirability or undesirability of concentrating the litigation of

the claims in the particular forum," and (iv) the likely difficulties in managing a class action."

Fed. R. Civ. P. 23(b)(3)(A)–(D).

Taking these factors in order, given Class Members' limited resources and the costs of

bringing separate actions, proceeding as a class action is "more economically sensible."

Lizondro-Garcia, 300 F.R.D. at 177.  Second, there is no indication of any pending litigation by

individual class members concerning the claims against Defendants.  Third, because the alleged

wrongful conduct occurred within this District, concentrating the action in this Court is

appropriate.  Fourth, class adjudication will consume fewer judicial resources than managing

multiple individual actions.

Accordingly, the Court finds that the requirements of Rule 23(a) and (b)(3) are satisfied

such that the District Court may conditionally certify the proposed Class.

D.  **Appointment Of Class Counsel**

If the District Court conditionally certifies the proposed Class, Rule 23(c)(1)(B) requires

the appointment of class counsel under Rule 23(g).  Fed. R. Civ. P. 23(c)(1)(B).  Under Rule 23(g),

a court considers four factors in appointing class counsel:  (i) the work counsel has done in

identifying or investigating potential claims in the action; (ii) counsel's experience in handling

class actions; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class.  Fed. R. Civ. P. 23(g)(A)(i)–(iv).

Plaintiffs' counsel, C.K. Lee of the Lee Litigation Group, represents that he and his colleagues "have done substantial work identifying, investigating, prosecuting, and settling" the claims of the Plaintiffs and the Class Members.  (ECF No. 54 at 20; see ECF No. 55 at 3). Plaintiffs' counsel has been involved in the case from its inception, demonstrating its commitment and financial ability to represent the class.  See Lizondro-Garcia, 300 F.R.D. at 178. As noted above, Plaintiffs' counsel represents that he has been substantially involved in prosecuting wage and hour class and collective actions for over ten years, and has been appointed as lead counsel in over 70 wage and hour cases that have been certified as class and/or collective actions.  (ECF No. 55 at 2).

Accordingly, the I recommend that C.K. Lee of Lee Litigation Group be designated as Class Counsel.

E.  **Conditional Approval Of A Collective Action**

Plaintiffs also request approval of this case as a collective action under FLSA § 16(b), 29 U.S.C. § 216(b).  They argue that they are "similarly situated" with the Class Members insofar as they "all claim that they were not paid overtime wages, nor were they paid for all hours worked in a workweek due to Defendants' alleged time shaving policy."  (ECF No. 54 at 19).  Applying the "fairly lenient standard" followed by other courts in this District, see Malloy v. Richard Fleischman & Assocs. Inc., No. 09 Civ. 322 (CM), 2009 WL 1585979, at *2 (S.D.N.Y. June 3, 2009) (internal citations omitted), the Court finds that Plaintiffs have satisfied their de minimis burden

of showing that they are similarly situated to the proposed Class Members and therefore

recommend that conditional approval of a collective action be granted.

      **F.**  **The Proposed Notice**

      Plaintiffs seek approval of the proposed Notice and its plan of distribution.  (ECF No. 55-

2).  Because the parties are simultaneously seeking to certify a settlement class and settle a

class action, the elements of Rule 23(c) notice for class certification and Rule 23(e) notice for

settlement or dismissal must both be met.  See In re Glob. Crossing Secs. & ERISA Litig., 225

F.R.D. 436, 448 (S.D.N.Y. 2004).

      First, under Rule 23(c)(2)(B), "the court must direct [that] class members [be provided

with] the best notice that is practicable under the circumstances, including individual notice to

all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

(Rule 23(e)(1) similarly requires notice in a "reasonable manner" to class members bound by

the settlement.  Fed. R. Civ. P. 23(e)(1)).  The notice must set forth:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B)(i)–(iv).

      Here, the Court finds that the form and content of the proposed Notice satisfy most of

the requirements of Rule 23(c)(2)(B), with two exceptions:  the Notice must be revised to

inform recipients that (1) they may enter an appearance through an attorney, and (2) the

District Court will exclude any member of the class who requests exclusion through the

procedures set forth in the Notice.  The first addition should be included in the answer to

question 10 on page 5 of the Proposed Notice, and the second additional should be included in the answer to question 7 on page 4 of the Proposed Notice.

In addition, because some of the recipients of the proposed Notice are individuals who can opt in to the FLSA collective action, Plaintiffs' counsel should also be directed to attach to the Proposed Notice an opt-in form containing language that defines and explains the FLSA collective action claims and describes the procedures for opting-in.  See Lizondro-Garcia, 300 F.R.D. at 181.

With these modifications, the form and content of the proposed Notice will then comport with due process, Rule 23, and the FLSA.  Plaintiffs' procedures for distribution of the Proposed Notice comport with procedures approved by other courts in this District and do not require any modification.  See Lizondro-Garcia, 300 F.R.D. at 181–82.

## V.   CONCLUSION

For the foregoing reasons, the parties' Settlement Agreement appears to fall within the range of possible settlement approval, such that notice to the Class is appropriate.  See Danieli, 2009 WL 6583144, at *4–5 (granting preliminary approval where settlement "has no obvious defects" and proposed allocation plan is "rationally related to the relative strengths and weaknesses of the respective claims asserted.").

Therefore, I respectfully recommend that:

(1)  Plaintiffs' Motion for Preliminary Approval of the proposed class action settlement and plan of allocation (ECF No. 53) be **GRANTED**;

(2)  The proposed Class, defined as "Named plaintiffs and up to 367 current and former hourly, non-exempt employees employed by Defendants from November 13, 2011

to July 30, 2018," be **CONDITIONALLY CERTIFIED** as a class action under Rule 23(a)

and (b)(3) and **CONDITIONALLY APPROVED** as a collective action under FLSA

§ 216(b); Andrew Chang and Ryan Santos be **APPOINTED** class representatives; C.K.

Lee of Lee Litigation Group PLLC be **APPOINTED** as class counsel; and Rust

Consulting be **APPOINTED** as Claims Administrator;

(3) The Proposed Notice to the class be **APPROVED** <u>subject to the revisions</u> described in

this Report and Recommendation and the parties directed to distribute it according

to the procedures set forth in the Settlement Agreement; and

(4) A date for a fairness hearing and related dates be set at the direction and

convenience of the District Court.


DATED:        October 23, 2019
              New York, New York


SARAH L. CAVE
United States Magistrate Judge

\*                    \*                    \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)).  A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2).  Such objections, and any response to objections, shall be filed with the Clerk of the Court.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).  Any requests for an extension of time for filing objections must be addressed to Judge Swain.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.**  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).